Case: 1:26-mj-00080
Assigned To : Sharbaugh, Matthew J.
Assign. Date : 4/27/2026
Description: COMPLAINT W/ARREST WARRANT

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, ████████████, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of a criminal complaint charging **COLE TOMAS ALLEN** ("**ALLEN**") with violations of 18 U.S.C. § 1751(c) (Attempt to Assassinate the President of the United States); 18 U.S.C. § 924(b) (Transportation of a Firearm & Ammunition in Interstate Commerce with Intent to Commit a Felony); and 18 U.S.C. § 924(c)(1)(A)(iii) (Discharge of a Firearm during a Crime of Violence).

2.      The facts set forth in this affidavit are based on information that I have obtained from my personal involvement in the investigation and from other law enforcement officers who have been involved in this investigation, on documents that I have reviewed, and on my training and experience.  Where I have reported statements made by others or from documents that I have reviewed, those statements are reported in substance and in part, unless otherwise indicated.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

### AGENT BACKGROUND

4.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been a Special Agent with the Federal Bureau of Investigation (FBI) since 2009.  I am currently assigned to the FBI's Washington Field Office.  I have training and experience in the preparation, presentation, and service of criminal complaints and arrest and search warrants and have been

involved in the investigation of numerous types of offenses, including crimes of terrorism (domestic and international).

## VENUE

5.    Acts in furtherance of the offenses alleged herein occurred within the District of Columbia. *See* 18 U.S.C. § 3237.

## PROBABLE CAUSE

6.    On April 25, 2026, the White House Correspondents' Association Dinner ("the Dinner") was held at the Washington Hilton hotel located at 1919 Connecticut Avenue, NW, Washington, D.C.  Multiple high-ranking U.S. government officials attended and were featured at the Dinner, including President of the United States Donald J. Trump, the Vice President of the United States, and multiple Cabinet Secretaries.

7.    More than seven weeks earlier, on March 2, 2026, President Trump publicly announced that he would attend the Dinner, posting on his Truth Social account: "The White House Correspondents Association has asked me, very nicely, to be the Honoree at this year's Dinner, a long and storied tradition since it began in 1924, under then President Calvin Coolidge." President Trump added that it would be his honor to accept the invitation. The March 2, 2026 post was publicized by various media outlets.

8.    On or about April 6, 2026, **ALLEN** made a hotel reservation at the Washington Hilton hotel for three nights, from April 24 to April 26, 2026.

9.    On or about April 21, 2026, **ALLEN** traveled by train from his home near Los Angeles, California, to Chicago, Illinois.  **ALLEN** arrived in Chicago on or about April 23, 2026.

10.    That same day, **ALLEN** boarded a train in Chicago, Illinois, which arrived in Washington, D.C. on April 24, 2026, at approximately 1:00 p.m.

11.     A few hours later, on April 24, 2026, **ALLEN** checked into a specific hotel room at the Washington Hilton hotel, located at 1919 Connecticut Avenue, NW, at approximately 3:00 p.m.  **ALLEN** remained there overnight.

12.     The Dinner was scheduled to be broadcast on national television beginning at 8:00 p.m. on the evening of April 25, 2026.  President Trump arrived at the dinner at approximately 8:00 p.m., accompanied by First Lady Melania Trump.  The dinner was held inside a ballroom located on the Concourse Level of the Washington Hilton hotel.

13.     At approximately 8:40 p.m., **ALLEN** approached a security checkpoint on the Terrace Level of the hotel leading to the location of the dinner.  **ALLEN** approached and ran through the magnetometer holding a long gun.  As he did so, U.S. Secret Service personnel assigned to the checkpoint heard a loud gunshot.  U.S. Secret Service Officer V.G. was shot once in the chest; Officer V.G. was wearing a ballistic vest at the time.

14.     Officer V.G. drew his service weapon and fired multiple times at **ALLEN**, who fell to the ground and suffered minor injuries but was not shot.  **ALLEN** was subsequently arrested.

15.     At the time of his arrest, **ALLEN** was in possession of a 12-gauge pump action shotgun and a Rock Island Armory 1911 .38 caliber pistol on his person.

16.      As part of this investigation, law enforcement reviewed records of firearm transactions from California and federal database sources.  The database records showed that on or about August 17, 2025, **ALLEN** purchased a 12-gauge pump action shotgun from a firearm dealer in a city in California, and that on or about October 6, 2023, **ALLEN** purchased a .38 caliber semi-automatic pistol from a firearm dealer in a different city in California.  Based on the serial numbers in the database records, these two firearms are the same two firearms that **ALLEN** possessed and/or fired at the Washington Hilton hotel in Washington, D.C. on April 25, 2026.

17.     Following his arrest, **ALLEN** was advised of his *Miranda* rights and invoked his right to remain silent.  **ALLEN** was transported to Howard University Hospital for minor injuries, and has since been released to law enforcement custody.

18.     Shortly before 8:40 p.m. on April 25, 2026, **ALLEN** sent an email to members of his family and a former employer explaining the actions he was about to take.  The email, a copy of which law enforcement has obtained from a recipient, stated: "I wish I could have said anything earlier, but doing so would have made none of this possible. My sincerest apologies for all the trouble I've caused. (scheduled send)-Cole."  Based on my training and experience with electronic accounts, I believe that, under these circumstances, the phrase "scheduled send" means that before attempting to breach the security perimeter at approximately 8:40 p.m. on April 25, 2026, **ALLEN** used settings in his email account to schedule the email to automatically send at a predetermined time without additional actions from him.

19.     Attached to the email was a .txt file titled "Apology and Explanation," which stated in part:

> Hello everybody!
>
> So I may have given a lot of people a surprise today. Let me start off by apologizing to everyone whose trust I abused. I apologize to my parents for saying I had an interview without specifying it was for "Most Wanted."
>
> I apologize to my colleagues and students for saying I had a personal emergency (by the time anyone reads this, I probably most certainly DO need to go to the ER, but can hardly call that not a self-inflicted status.)
>
> I apologize to all of the people I traveled next to, all the workers who handled my luggage, and all the other non-targeted people at the hotel who I put in danger simply by being near.
>
> I apologize to everyone who was abused and/or murdered before this, to all those who suffered before I was able to attempt this, to all who may still suffer after, regardless of my success or failure. I don't expect forgiveness, but if I could have

seen any other way to get this close, I would have taken it. Again, my sincere apologies.

On to why I did any of this:

I am a citizen of the United States of America.

What my representatives do reflects on me.

And I am no longer willing to permit a pedophile, rapist, and traitor to coat my hands with his crimes.

(Well, to be completely honest, I was no longer willing a long time ago, but this is the first real opportunity I've had to do something about it.)

While I'm discussing this, I'll also go over my expected rules of engagement (probably in a terrible format, but I'm not military so too bad.)

Administration officials (not including Mr. Patel): they are targets, prioritized from highest-ranking to lowest
Secret Service: they are targets only if necessary, and to be incapacitated non-lethally if possible (aka, I hope they're wearing body armor because center mass with shotguns messes up people who *aren't*
Hotel Security: not targets if at all possible (aka unless they shoot at me)
Capitol Police: same as Hotel Security
National Guard: same as Hotel Security
Hotel Employees: not targets at all
Guests: not targets at all

In order to minimize casualties I will also be using buckshot rather than slugs (less penetration through walls)

I would still go through most everyone here to get to the targets if it were absolutely necessary (on the basis that most people *chose* to attend a speech by a pedophile, rapist, and traitor, and are thus complicit) but I really hope it doesn't come to that.

20.    **ALLEN** signed his email "Cole 'coldForce' 'Friendly Federal Assassin' Allen." I know from my investigation that **ALLEN** used the moniker "cold force" in multiple online accounts associated with him.

5

**ALLEN's INTERSTATE TRAVEL**

21.     According to travel records provided by Amtrak, from April 21 to 23, **ALLEN** travelled by train from Los Angeles, California, to Chicago, Illinois.  From April 23 to 24, **ALLEN** travelled by train from Chicago, Illinois, to Washington, D.C.  **ALLEN** previously purchased the two firearms he used in this crime in California.  Thus, **ALLEN** crossed state lines with a firearm.

**CONCLUSION**

23.     Based on facts described above, there is probable cause to believe that **COLE TOMAS ALLEN** violated 18 U.S.C. § 1751(c) (Attempt to Assassinate the President of the United States); 18 U.S.C. § 924(b) (Transportation of a Firearm & Ammunition in Interstate Commerce with Intent to Commit a Felony); and 18 U.S.C. § 924(c) (Discharge of a Firearm during a Crime of Violence).

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

24.    I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for an Arrest Warrant.  I submit that Assistant U.S. Attorney Jocelyn Ballantine, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

Respectfully submitted,



Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 on April 27, 2026



_____
MATTHEW J. SHARBAUGH
UNITED STATES MAGISTRATE JUDGE